## Porter *versus* Zeitinger *et al.*

1. The rule that a factor selling on credit and taking a note in his own name does not by that alone become liable to his principal in case of the purchaser's failure, has no application if the factor negotiates the note for his own use.

2. Where therefore the principals wrote, " we will take the paper and the risk; . . . we are informed by parties . . . that they will take any paper of the above-named firm," and thereupon the factor took the note to his own order, discounted it and credited it on his books to his principals, but on the subsequent failure of the maker to pay, charged it back to them: *Held,* that he was liable to the principals for the amount.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny County.*

Action on the case by Zeitinger & Zoppi, partners, etc., for use of E. Harrison & Company, against J. W. Porter.

The following facts appeared on the trial of the case before COLLIER, J.

The plaintiffs were iron manufacturers in St. Louis. The defendant was their factor in Pittsburgh; received consignments of iron from them, made advances thereon, and guaranteed payment for goods sold. Prior to December, 1874, he charged a commission of 3 per cent. On December 8, 1874, he wrote to plaintiffs, " I am now charging 5 per cent. on all sales, when I take the risk on the paper; I run such a great risk. I have lost over $10,000 this year, after all my work. . . . . So I find I must raise my commission or break up, or go out of the business." Defendant testified that in June, 1875, Zoppi, one of the plaintiffs, came to Pittsburgh, and at an interview with the defendant told him that Rogers & Burchfield wanted to buy " blooms." Defendant intimated a doubt whether Rogers & Burchfield were good. Zoppi replied that his firm believed them to be good, and would take the risk. Defendant requested that this be put in writing. Zoppi returned to St. Louis, and on June 5th, 1875, plaintiffs sent the following letter:

" DEAR SIR: We refer to our last letter, and hereby notify you that if you can sell one hundred tons blooms to Rogers & Burchfield we will take the paper and the risk. In this case if you have not double blooms enough on hand we will send the balance. We are informed by parties who are dealing in pig-metal that they will take any paper of the above-named firm, and, therefore, if you can effect any sale please do so at the best market price.

" Yours, truly,     ZEITINGER & ZOPPI."

[Porter *v.* Zeitinger *et al.*]

To which the defendant replied:

"PITTSBURGH, June 7, 1875.

" MESSRS. Z. & Z.

" GENTS: Your favor 5th received. I saw Rogers & B. to-day. They do not want any blooms just now. I will try and place the blooms. I am as anxious to sell them as you are, and will do so at first opportunity. R. & B. said your blooms are not regular—some good and some not.

" Respectfully, J. W. PORTER."

The defendant subsequently sold the blooms to Rogers & Burchfield, and took their note, payable to his own order, which he discounted at 9 per cent., and credited plaintiffs' account with the sum. Before the maturity of the note Rogers & Burchfield failed. Porter then charged back the note to the plaintiffs, and claimed credit for the amount of it in the final settlement. Plaintiffs brought suit for the amount which would be due to them, charging the note to defendant.

It was in evidence that plaintiffs and defendant had a running account, and at the time of the sale to Rogers & Burchfield the plaintiffs owed the defendant about $12,000, which he had about enough iron in his hands to cover at market prices.

The plaintiffs requested the Court to instruct the jury, *inter alia*, as follows:

" 2d. That the letter of June 5th, 1875, did not authorize the defendant to sell to Rogers & Burchfield, at plaintiffs' risk, except upon condition that the paper received should be made and delivered to them."

The Court affirmed this point and charged the jury:

" The plaintiffs are iron manufacturers or dealers, and the defendant is a broker, residing in this city, who was engaged in selling blooms and iron for them in this market. Prior to this sale to Rogers & Burchfield the defendant had been guaranteeing to the plaintiffs the payment for all goods sold by him. Before making this sale he says that he told one of the plaintiffs that Rogers & Burchfield were not considered very good, financially speaking, but was instructed to sell them at their (the plaintiffs') risk; that he asked to have that instruction in writing, and the gentleman replied that he would consult his partner and would write. Afterwards a letter was received by the defendant as follows: [Here the Court read the letter of June 5th, 1875.]

That letter does not need any construction; that authorizes Mr. Porter to sell one hundred tons at their risk. " We will take the paper and the risk." It was written on June

[Porter *v.* Zeitinger *et al.*]

5th, 1875. On June 7th Mr. Porter answered in writing as follows: [Here the Court read the letter of June 7th.]

On August 7th Mr. Porter sold the blooms to Rogers & Burchfield and took the note you have in evidence, not to the plaintiffs, but to himself. He did not send the note to them, so that if they chose to dispose of it they could have done so, but he charged it up in his account which he rendered the plaintiffs, giving them credit for it. Rogers & Burchfield failed and Mr. Porter then charged the note back to the plaintiffs. Prior to that it appears in his account as his own, but he then charged it back, and the question now is whether he is liable for it, and that depends entirely on whether Mr. Porter can satisfy you from the weight of the evidence—the burden is on him—that the plaintiffs agreed to take the risk. On that you have the letters, the accounts, the charging and the re-charging, and all the other testimony, which has been commented on by counsel, and you must be satisfied from the weight of it that the plaintiffs took the risk.

[The instructions in the letter, taken alone, certainly were not complied with. That is very plain from the evidence. The letter says, " If you sell them we will take the paper and the risk." Good faith required if Mr. Porter sold under that letter, that he send the plaintiffs the paper, or notify them, if he took it in his own name, and that he had sold, and that the paper was at their disposal.]

The counsel for the defendant argues and claims that there was a large balance due defendant, and treated this as a cash sale, so sent in his account, and there was no objection to it. The plaintiffs admit this much, that if it had been a cash sale they would not have objected to Porter keeping the money, but they allege that the first notice they had of the actual nature of the transaction was when he charged the note back to them, treating it as theirs, and that then they objected.

The whole case turns on the question whether the defendant was authorized to sell the metal at the plaintiffs' risk. If he was, then, of course, they would have to stand the loss, but he must satisfy you that he was so authorized. He had authority to take the paper at their risk, but he did not send it to them, and if he has shown to your satisfaction why he did not, your verdict should be for him.

[It is alleged that in the Rogers & Burchfield bankruptcy proceedings Mr. Porter proved the note as his own claim, as if it was his own property, and it is very plain to the Court, from all of these facts, that there was no compliance with

[Hemphill's Appeal.]

the letter, and therefore the risk ought not to be the plaintiffs', but the defendant's.]

That is the main question for you to decide, and the burden of escaping liability is on the defendant. . . . .

The plaintiffs are entitled to your verdict, unless you find from the evidence [the burden of proof being on the defendant] that they agreed to take the risk. If they did, your verdict should be for the defendant."

The defendant excepted to the answer to plaintiffs' second point and to the charge.

Verdict for the plaintiffs, upon which judgment was afterwards entered. Defendant then took out a writ of error.

The portions of the charge in brackets and the answer of the Court to the plaintiffs' second point, were assigned for error.

*S. Schoyer, Jr., & McMurray* for plaintiff in error.

*Slagle & Wiley* for defendants in error.

OCTOBER 17TH, 1881.—PER CURIAM: It may be conceded that a factor selling on credit, and taking a note in his own name, does not by that alone become liable to his principal in case of the purchaser's failure. The rule, however, is different if the factor negotiates it for his own use. We think the true construction of the written authority, under which the plaintiff in error acted, was in case of a sale to transmit the note to his principals. Their clearly implied intention was to dispose of it to parties with whom they were dealing. Instead of so doing he caused it to be discounted, and before it matured the makers failed. The learned Judge correctly held the plaintiff in error thereby became liable to his principal.                               Judgment affirmed.